Mr. Horner, right? Yes, sir. Okay, and the other side has two parties, Mr. Donas and Mr. Mahoney. I understand, Mr. Donas, you're going to have 12 minutes, is that correct? I'm sorry, Danis, I apologize. And Mr. Mahoney, you'll have three minutes, is that correct? Yes, and it's Maloney. Maloney, okay, very well. Glad we got that straightened out. Okay, all right, Mr. Bora, please proceed. Thank you, Your Honor. Good morning, my name is Amit Bora from Kasowitz Benson Torres and I represent Relevant. This court should reverse the district court's grant of summary judgment to Sunset because the court got it right the first time. This is precisely the sort of case that qualifies for the series exception. Let's start with that. Yes. Why, what case can you cite that says that a second district judge who takes over the case and who feels that the first judge got the law wrong cannot rule differently? What's your best case? Delta Savings Bank, Your Honor, from this court. So the question that Your Honor poses is essentially whether an interlocutory holding can become law of the case. Talk up a little bit, as I mentioned to somebody else, our acoustics are not great here. Oh, I apologize, Your Honor. So the case that I mentioned is Delta Savings Bank and the question Your Honor poses is whether an interlocutory holding can achieve law of the case status and in certain circumstances it can, particularly when the case dispositive holding or a very important holding on, say, a motion to dismiss or a motion for summary judgment. Not every discovery ruling will achieve that status, not every scheduling order will achieve that status, but this sort of order will. And in Delta Savings Bank, the court encountered the same sort of situation that Your Honors are encountering there. One district court judge held that certain plaintiffs lacked, certain plaintiffs, excuse me, had standing and denied a motion to dismiss on that basis. But in Delta Savings, didn't the Ninth Circuit say that we have to review the merits to decide whether there's an abuse of discretion? Yes. So if you lose on the merits, that probably also causes you to lose this argument. Well, Your Honor, however, the essential point is that the court applied this three-part framework and the three-part framework is, yes, the second judge has the discretion to change course, but there must be a cogent reason and this court has actually explained what those reasons are. First, the first judge must get it clearly wrong and there must be some sort of manifest injustice of place. Second, there must be some sort of new evidence. And third, there must be a change in the law. In Delta Savings Bank, there actually had been a change in the law. In Pitt River, that's another case that says that interlocutory holdings can achieve law of the case status. And in this case, given our substantive arguments, I don't think that there's a credible argument that we were clear, that the first judge was clearly wrong. Well, it seems to me we need to decide whether PREI or POSCO applies. I gather you like POSCO. Yes, Your Honor. And why? Your Honor, this case is atypical. Now, let me start with what I think Your Honor's concerns likely are. This is not a case that will stand for the proposition that a pre-suit demand letter is extortion, nor is it a case that will stand for the proposition that a series of such letters would sustain a case. I used to do lots of environmental law, lots of CEQA, NEPA. And the process that's involved there involves all kinds of letters and appearances and reports and the like. The POSCO case was kind of weird. It's got like 29 separate cases. You don't have that here. It seems like POSCO is kind of a one-off. And what I'm struggling with is the idea that you can treat in what is clearly an administrative proceeding, where you get input from neighbors and, you know, all kinds of interested parties about whether the CEQA has been complied with. You got at least four different actions here, maybe more, but not The touchstone is the volume of abusive litigation activity. And here the volume was extraordinary. The volume of lawsuits or the volume of client filings? Abusive petitioning activity. And here we have numerous data points in the record that show that this is not the sort of typical CEQA case that or administrative or judicial proceeding that Your Honor is familiar with. Here we have a Plum Committee member who said to defendants, I know you've been here before this body many, many, very similar stacks of paper, pleading with them to stop this sort of abuse. I get that. And I really appreciate your client's feeling of injury. I get that. And I think the state legislature in California, particularly now where we're wanting housing, is realizing that CEQA needs to be amended. They've done it a number of times. But what I struggle with is this. You've got a situation where you have at least four different lawsuits. But in my understanding, in each case you either withdrew or there was a settlement. And in almost every case, not only was there a monetary settlement, but there were other conditions that were imposed, which is the very kind of thing that you usually get in CEQA cases. How can it be a baseless case when you settle it? Your Honor, there's something deeply perverse about the argument that this 5.5 million dollar settlement suggests it's baseless. Because the reason that relevant settled was that it had this credible fear that it was at the brink of financial ruin. And the reason it felt that was that this litigation and this petitioning activity was overwhelming it, was crushing it. And the reason that... But with respect, I do have empathy for your client. I get that. But it's kind of the way CEQA was set up. It's been used by a lot of people over a lot of time to stop projects they don't like. And many of them have gotten paid off, et cetera, et cetera. But the fact is, that's the legislature's doing. Your Honor, in this settlement agreement, the sort of concessions that Sunset extracted were concessions that are actually antithetical to the whole purpose of CEQA. Here, relevant is actually now prohibited from challenging them on environmental grounds. In addition to the... What I'm struggling with is this. How can we get to the motivation, which is part of your case, if you settled the case? How can it be baseless, in quotes, if you settled the case? For whatever reason. Because the settlement is actually an element of the extortion. And here, the settlement conditions are completely at counter purposes with the point of CEQA. As Your Honor knows, a 5.5 million damages award isn't available under CEQA. And the type of concessions they got here were to restrict relevant's ability to conduct its commercial real estate business. They had restrictions on the number of hours that the relevant hotel properties could be operating, the number of staff that could be there. All these restrictions are geared toward benefiting the business interests of Sunset. And it happens all the time. All the time. But in this case, not only did the opposing party benefit, but in a few instances, if I understand the record correctly, other parties also benefited. They got things added to the permit. Your Honor, but the question of whether this case is typical is an empirical question based on experience. And we actually have expert testimony in the record that says that this is extreme and atypical. So at the very least, it raises a fact dispute that should have gone to the jury. Some fact finders may agree with you that this is, but others might not. What would go to the jury? That it was baseless? Subjective motive. You cannot get, under our case law, you cannot get to the ulterior motive until you've shown that the underlying action was baseless, right? And Your Honor, the settlement agreements are part of the argument that it's baseless. But also, if Your Honor's look at the actual merits of the administrative challenges and the judicial challenges, the lack of merit to these arguments is apparent from the plain text of what they're trying to convey. So, for example, there's one superior court decision here, because as Your Honor mentioned, there were settlements. And in that one superior court decision, we have telling statements from the court. On transportation, the court said, this court will not countenance Sunset's blatant sandbagging. On parking, the court said, Sunset has failed to explain its reasoning. Sunset has failed to develop these points in any reasonable manner. So, point by point, the one court that had an opportunity to evaluate whether these arguments are baseless or not said that they are baseless. And now for the other CEQA challenges. So, in that case, wasn't it settled? No, Your Honor. So, in that case, this is the Selma project. And in this case, this is not one of the ones that settled. Here, the superior court issued a scathing ruling. And they went through their objection. Is that correct? So, this one ended up with an interlocutory remand on an issue which, so, the problem was that there were so many studies in the record. This record was enormous that the court issued an interlocutory remand for clarity. Sunset actually appealed that decision. And the appellate court said that this is a non-appealable order, which is yet another example of just trying to pull every single lever. Now, we have a situation here that's extreme. And in the CEQA cases that Your Honor, the attorneys say something like, the city will not allow your firm to continue to hijack the administrative record preparation process to improperly delay the resolution of this litigation. We have a government attorney saying this. A pattern or practice of abusive, of abusing the administrative record preparation process to improperly delay resolution of CEQA lawsuits should not be allowed. So, this is an extreme case. But again, you're obviously a capable lawyer. You're from another city, a well-known city, I might note. But I'm sure you have that happened there too. But this has happened again and again and again and again throughout the state of California. Your Honor, I... Throughout it. And there's been regular hearings before the state legislature with people like your client complaining about the way it's Your Honor... I get that. But, if you settle, I think you undercut the idea that it is a baselink complaint. Your Honor, however, in this case, before the settlement, we even have statements from the other side saying that, look, we're not going to discuss anything about CEQA. We just want a monetary payment. We have statements for the other side saying, you know the drill. We'll need a check. This is all data that should have gone to the jury for the fact finder to decide. But that's the second part of the formula, which you don't get to unless you have a baseless complaint. And, Your Honor, I think that once you look at the actual arguments, which are in the record, the lack of merit to them will be readily apparent. So... If you have any time, it's entirely up to you, but you're down to three minutes and something seconds. I would ask the question and I would be fine with him also being able to keep some time. But I thought there were two sort of arguments here. One is that, is it objectively baseless? If it is, then you can look at motivation. But there was another exception for sham litigation under Norah Pennington, which is there's a series of claims or abuses that, even though the person who's alleged to be doing this improperly may win on some of them, that doesn't matter because there's a series of events. And in the case at issue, it was 29 lawsuits. So do you have a limiting test in mind? Is there a way that a district court could determine what counts as abusive process? Is it a letter? Is it appearing at a hearing? Is it an appeal? That seems hard to parse out to decide that there's multiple, multiple things happening as opposed to here's one cause of action or one proceeding. Yeah. Your Honor, that's a really helpful line of inquiry. So first, under the series exception, you're right. We don't necessarily even need to consider the merits. The question is actually the subjective motivation. And so I think the limiting principle would be, let's look at the evidence. Let's see what the subjective motivation is. And in this case, we have enough summary judgment evidence to get to a jury. What I'm having with your argument is before we even get there, we have to decide that the series exceptions in play, that it applies. And I understand that you disagree with counting that seems clunky and four actions versus 29 or two versus 29. But how else can it be done? Well, you can just add up every single letter, phone call, meeting, appeal, appearance at a city council meeting, and all of those count as a different proceeding? Right. But in this situation, I think you would consider the volume of litigation activity, the volume of petitioning activity, and compare that to the normal case and see whether there is something atypical going on, something extreme. And this is the rare case that reaches that sort of extreme threshold. And in terms of counting, if we wanted to do a counting exercise, which might be more administrable, we still have four petitions, at least four petitions. We have the four petitions that are all CEQA related, if you take all the administrative and judicial challenges. And then we have a number of others that actually don't fall into CEQA. There is the demolition permit challenge, where they challenged a demolition permit with respect to a building that had already been demolished. And every step of the way, municipal and administrative bodies were aghast at why Sunset was asking the body to do something that was ultra vires. Then we have the letter to the prosecutors. And then we have yet another one. So we have seven at least. Yes, and I encourage your honors to follow. Yes, your honors, but I encourage your honors to follow that. And we would have at least seven, if not 20. But I think if your honor would like to do a counting sort of analysis, we still would win. Other on point authorities would be Hanover, where four was enough. Here we have seven. Four CEQA actions, the demolition objection, letters to prosecutors, that's six, which are seven. The LA Community Redevelopment Agency challenge. So there, that is not part of the CEQA process. They once again raised a meritless claim. This time their argument was, and your honor will be familiar with why this is a baseless argument, their argument was that a municipal authority does not have the power to issue a new zoning regulation and to change its own zoning regulations. And the courts have made it clear that it's well settled that rezoning is within a municipal authority's common law police power. So these actions, these petitions were baseless. We don't even need to reach that if we do the series exception. We look at the volume of petitioning activity, which is extreme. Your honors, if I may say something about it. We used up a little of your time. Thank you, your honors. All right. And it's Danis, right? Danis. Danis, okay. I knew it was wrong. Danis, okay. Thank you very much, your honor. Twelve minutes, right? Yes, so I'll start with, I guess, where the colloquy had just left off, which is the idea, I believe, of opposing counsel was saying that if they were able to get the USS Pasco test, there's no inquiry into baselessness. That's simply not right. The U.S. Supreme Court and PREI said, and I quote, nothing in California motor transport retreated from an indispensable objective component. And in California motor transport, the case was also talking about finding a pattern of baseless actions. So there has never been, and there is no recognized sham exception that entirely removes baselessness from the analysis. And as opposing counsel would have it be, it's simply a matter of looking at subjective intent. If we went with the Pasco approach, there's really no caboting principle, is there? I mean, do you count every letter? Do you count every appearance? In that case, it involved 29 separate actions. We don't have that here. PREI is the standard, is it not? Yeah, it is. PREI absolutely applies. But even if USS Pasco applied, there is no case in the United States that they have been able to find other than one split decision from the Third Circuit in Hanover where it has been applied to single-digit cases such as we have here. There simply isn't. And Judge Greenberg, in the Hanover case that is their, really their sole authority, goes to great lengths to say that we have never seen, no case has ever applied that exception to so few proceedings. Even if we were under USS Pasco beyond that, this Court's decision in USS Pasco talked about a batting average. And here, if you look at, in the three different proceedings that we have, our batting average was there were no losses. And the reason why there were no losses was you look to, as Judge Smith was saying, the fact that in CEQA you have all of these prefatory administrative steps that one has to go through. They culminate in a case that's filed in court. And here, right after the judge and Judge Fruin issued his ruling finding against them on an interlocutory issue, within three hours they called and pursued a settlement. That absolutely betrays the idea that it was the crushing burden of litigation that caused them to buckle. Okay? That would have been something that would have happened earlier on in the process. One doesn't buckle due to pressure from the process three hours after the ruling and the day before the trial. One buckles due to a fear of the result. And the reason here that they sought settlement, obtained a settlement, and under this Court's rulings and theme promotions, a Ninth Circuit case from 2008, talking about the fact that settlement is evidence of lack of baselessness, okay, there would be, they have a 0% loss or, if we're looking at the batting average here and applying it, we were either 1,000% but certainly not 0%. Well, what about, so there were the four actions. Two settled. One, there was an order for some sort of remand for reconsideration of an issue. The fourth one was withdrawn. Are you counting that as a victory, the action you withdrew? So the withdrawn action doesn't count at all under the Wellbutrin XL case that we cited. Withdrawn actions simply don't count. Plus, as Judge Gutierrez found, they conceded in their papers that it was not a predicate act. They said the Schrader is not, the Schrader objection is not a predicate act. So that leaves us with three others. One of them, the Selma decision, was a 60-page ruling that opposing counsel cherry-picks some favorable language in. But also in that 60-page ruling, the Court found that there were two CEQA violations. If there are any claims in an action that are viable, even if the other ones are not, that action is not baseless as a matter of law. So here, yes, there were claims that were lost in the Selma action, but we won on two different CEQA, finding two different CEQA violations, substantial ones, on piecemealing and on noise, and sent it back down. And now, under a subsequent case that came out not too long ago, the Farmland Protection Alliance case, that would have been an automatic EIR, but now it was just sent back down. That was a win. Selma was a win. The first two actions, we were deprived of an opportunity to go to trial because they settled. And again, that can't be the rule that one can settle on the eve of trial, deprive us of an opportunity to go to trial and to prove our case, then turn around, and without filing a State tort action, without seeking sanctions, but simply then the next step being to file a 5-year RICO action seeking treble damages. That can't be the rule. The incentives there would absolutely undermine settlement, would make settlements impossible, and would actually lead to much more litigation. Counsel, I could see a principle being announced that there's no arbitrary numerical determination of when something is objectively unreasonable. It is at that point that it is objectively unreasonable, regardless of the number, and it can vary. But the second part of that would be, when is it no longer a jury question? Because we have got a summary judgment here that they're seeking to overturn. Yeah. So the issue in PREI, the U.S. Supreme Court said the baselessness, the objective baselessness inquiry is not a jury question. So if one gets past the first part, which is the objective baselessness, which is for a court, and then can get into subjective intent, perhaps that might be a jury question. And, you know, and here, there isn't even any evidence of ill intent, because as the amicus brief, I think, pointed out very well, the purposes of CEQA are about additional review, enhanced review, and public participation. Okay. So it would not make sense to make CEQA or to try and fit it into the box of other statutes. CEQA isn't only about preventing someone from being able to build at all. It's also about creating additional mitigation. It's also about just public participation in general. Those underlying purposes of CEQA were fully vindicated here. So there isn't even, even if you were under U.S.S. POSCO and even if you found that there was a first prong that the second prong of ill intent wouldn't be met and should have been decided as a matter of law. So if I understand your answer to my colleague's question, under PREI, baselessness is not a jury question. It's a legal question. Whether there was, in effect, scient or evil intent on the part of your client in this case is a jury question, but you never get to that if you don't get past baselessness. Is that correct? Correct. There is no sham exception, or at least not under PREI or California Motor Transport slash U.S.S. POSCO. One cannot find that those exceptions apply without doing some sort of baselessness analysis. Wait a minute. So I understand your argument with respect to PREI and the two prongs that have been set forth, the first being objective baselessness. The second exception under POSCO seems different. The dispute in the brief was about the number, the counting numbers, the series, is it 2, 4, 29, what is required to be a series and what is counted as you come to that number. And the idea is that even though some of these proceedings may have merit, as a whole they were brought without regard to merit and for the purposes of applying pressure or doing something illegal. So where does that decide? You're saying that that, you're looking at whatever the number is, whether all of them together were for a baseless reason, that is a legal question? I believe so. If I understand your honors question, I believe so. You mean the determination of which test applies is a legal question. Sure. And so it's a little muddled here because you keep going to PREI because that's the test you believe applies. And they are, of course, saying no, there were a number of things that happened here. When dealing with a series of lawsuits, the question is not whether any of them has merit. Some may turn out just as a matter of chance. But whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival, who decides that? Is that something the jury decides or something the court decides? I believe that would be a court decision. That would be a court decision. And so that gets to this idea of sort of what I believe Judge Kaczynski was referring to as the batting average. That has to do with a court decision about what counts as a win and what counts not as a win. And if we're talking about, I mean, I want to make sure I'm answering your honors question. Well, I guess the difficulty from, the difficulty would be if we count multiple things within a legal process as counting as a proceeding. Letters, appearances, meetings. How does the court then determine, looking at all of those things, what, how does, I guess I don't understand how you determine if all of those was cooperative. I would direct this court to a couple questions, a couple cases. One would be the U.S. Futures Exchange case, which found there that 54 different objections filed were all going to one aim. So there was essentially one proceeding for purposes of determining which test is going to apply. So it said it doesn't matter how many different letters you write or how many different particular steps there are. You look to the end. What is it going to? Here we have three different challenges. We have the Tommy, the Thompson, and the Selma. No matter how many different steps were taken to try and influence decisions regarding those three hotels, those all are grouped together as three different proceedings for purposes of which test applies, if that applies. So I would say that U.S. Futures Exchange goes to that. The CSMN case, it's a Tenth Circuit case that was cited in the amicus brief. That talks about whether there's a straight-through line on the appeals. And I believe this gets to the idea of in sequa, where you have steps that you just have to walk through. You have to go to public comment. Then you have to go to the administrative appeal. And then you have to go to court. And it's just boom, boom, boom. They're in a straight line, that CSMN. And finally, the wonderful real estate case, which is a district court case we cited in our papers, which actually applied in sequa, finding that all of the sequa actions get bunched together. And, again, just to sum it up, Hanover is the only case in the United States where the POSCO or the series exception was actually applied to four actions. And even in the Hanover case, which is a split decision, the majority engaged in an objective baselessness analysis, showing that one can never just skip straight to the intent analysis. I see that I'm over, so. Okay. Very well. You're not quite over, but you're almost there. So we will wish you a fond good morning. Thank you very much. Thank you for your argument. So now Mr. Maloney has got three minutes. All right. May it please the Court, my name is Patrick Maloney. I'm one of the lawyers that actually was in this case since its inception. And I've spent a lot of time thinking about it. What we've got here is not an antitrust case. And the reason why that's important is when we go look at all of the law that gives us the POSCO test and the PREI test, those are largely antitrust cases. Antitrust focuses on anticompetitive behavior, different than RICO. In RICO you have to prove multiple felonies. And why that's important here is we have a party that says it wants to come to court and prove four predicate acts, four felonies, the filing of three lawsuits and the threat of filing a third. As the Court noted, the first two cases, the Tommy and Thompson lawsuits, settled together. What hasn't been brought up today is those cases were settled with the help of very competent counsel, big law firms we all know the name of. Those settlement agreements included a statement that there was no duress. So we now have a situation where a litigant is saying, I settled a case. I'm not happy with the settlement. I want another bite at the apple. They can't do that in California State Court because they never got a favorable determination, ever. Which means if they try to go the malicious prosecution route, they lose. The Selma case, it's ongoing. There's no favorable termination. And they can read into the record comments the Court made. But the Court was sufficiently concerned, the trial court, that it sent it back for remand. They've not written a check to settle that case. That case remains ongoing. The Schrader case, that's a case, when I think of Noor Pennington and this California court analog, the demand letter process worked. And as I was reviewing our authorities this morning, the Cozio case and others, they talked about the benefits of a demand letter in early conversations to get rid of frivolous activity and frivolous lawsuits. It worked there. What you've got is they've got four predicate acts. None are objectively baseless. So they invoke an antitrust doctrine where you don't have to prove anything is a felony to try to use other little things they can find in the record that they're not confident enough to assert as a predicate act to try and make those little weird bits of character evidence make the four actual lawsuits, in which none of which they won, into felonies. It's illogical to think that when you have an ongoing lawsuit, that rises to the level of a RICO predicate act. Nobody's won, nobody's lost. It's illogical to think when you agree to settle a case with lawyers that you're the victim of a felony. So the reason why PRE has to apply here is you don't have any predicate acts at all. And the only way they can get there is to rely on an entirely different text. I hit my time perfect. Thank you. Perfectly. Thank you very much. All right. Mr. Rivera, we'll give you a couple of minutes to rebut, please. Thank you, Your Honor. I'd like to correct some of what my friends on the other side have been saying about these two different inquiries because I think they've been somewhat conflated. Now, with the series exception to the Knorr-Pennington doctrine, we have binding authority saying that this exception involves an inquiry pertaining to whether the petitions were brought pursuant to a policy of starting them without regard to the merits and for an unlawful purpose. So, again, without regard to the merits. So we can't conflate the two inquiries, and I'm not saying that the merits has nothing to do with the series exception. I'm simply saying that the inquiries must be kept distinct. Mr. Rivera, is it your contention that your side, in quotes, won any of the four filed actions? Yes, Your Honor. I think if you look at the Selma ruling, that would be a victory. You won? You were the successful party? Your Honor, for one, the question, it's not our burden to show that we won. The question is whether they've been bringing frivolous lawsuits. So the question is whether they can claim to have won. But if Your Honor looks at that decision and is asked to determine which party came out on top, that would be us in that decision. Their objections were rendered meritless. Now, as I've mentioned, under the series exception, however, the inquiry is whether they are abusing the process in this Court and said in Klipper, a case from 1829th Circuit, it is not the number of claims which is controlling, but whether the evidence shows that the claim or claims filed constitute an abusive process. So it's not just Hanover that we're relying on. We're relying on Supreme Court authority, this Court's authority, Hanover and Wall from the Fourth Circuit. There are a number of cases which explain what the series exception is all about. This is the sort of case where the other side has abused legal process and has therefore satisfied the series exception. And even if Your Honor disagrees, I respectfully submit that we are not clearly wrong. So under... You're up. Thank you, Your Honors. My colleagues, whether either has additional questions. Thanks to all counsel for your argument. This is an interesting case, and we will render a decision soon. The Court stands adjourned for the day. All rise. This Court for this session stands adjourned.
judges: SMITH, BADE, Fitzwater